Gouglemann *v.* The People.

---

SUPREME COURT. New-York General Term, May, 1855. *Mitchell, Roosevelt* and *Clerke,* Justices.

PIERRE GOUGLEMANN, plaintiff in error *v.* THE PEOPLE, defendants in error.

The word "ravish" is necessary, in charging the offence, in an indictment for rape; and its omission in the indictment will, after conviction, be ground for reversal on error.

The plaintiff in error was indicted in the Court of General Sessions of the city of New-York for rape. The indictment was in the following form :

*City and County of New-York, ss:*

The jurors of the people of the State of New-York, in and for the body of the city and county of New-York, upon their oaths, present: That Pierre Gouglemann, late of the first ward of the city of New-York, in the county of New-York aforesaid, on the first day of September, in the year of our Lord one thousand eight hundred and fifty-three, at the ward, city and county aforesaid, with force and arms, in and upon one Virginia Lyons willfully and feloniously made. an assault, and with her the said Virginia, by force and with violence, and against the will and consent of her the said Virginia, then and there had carnal connection and sexual intercourse, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

The accused pleaded not guilty, and the jury found him guilty of an assault with intent to commit a rape, and he was sentenced to imprisonment in the state prison for the term of four years and ten months. The cause was brought into this court for review, by writ of error, and the proceedings on the judgment stayed.

*Jonas B. Phillips,* for plaintiff in error.

I. The record shows a palpable and fatal defect in the indictment, in the omission of the pleader to charge that the defendant did "*feloniously ravish.*" The word "*ravish*" is essential, and cannot be supplied by any other term. (2 *Arch. Cr. Pl.,* 307; 12 *Waterman's Notes;* 1 *Hale,* 628, 632; *Harman* v. *Commonwealth,* 12 *Serg. & Rawle,* 69; 3 *Chitty's Cr. L.,* 812; 1 *East.,* 447; 1 *Russ on Cr.,* 686, *Phil. ed.,* 1850.)

II. The statute defines the offence: 1. By carnally and unlawfully knowing a female child under the age of ten years; or 2. By forcibly ravishing any woman of the age of

ten years or upwards. (2 *R. S.*, 663.) The conviction in this case could not be pleaded in bar to an indictment framed under the first subdivision of the statute.

III. The record is also defective in finding Gouglemann guilty of an assault with intent to commit a rape. The indictment contains no such count, and if defective for the reason alone assigned, the conviction for the minor offence cannot be sustained.

*A. Oakey Hall* (District Attorney), for the people.

The prisoner contends, for error, that the indictment does not sufficiently charge the offence whereof he stands convicted.

I. What should any indictment show? As well said by this court, in *People* v. *Biggs* (8 *Barb.*, 547), "That certainty and precision in an indictment is required which will enable the defendant to judge whether the facts and circumstances stated constituted an indictable offence; that he may know the nature of the offence against which he is to prepare his defence; that he may plead a conviction or acquittal in bar of another indictment, and that there may be no doubt as to the nature of the judgment to be given in case of conviction;" reaffirming, "It is sufficient if all the circumstances necessary to describe and render the charge intelligible in its legal requisites appear on the face of the proceedings and inform the defendant of the charge against him." (*People* v. *Phelps,* 5 *Wend.*, 1.)

II. The requisites of the statute, in accordance with such an aim, are set forth in the indictment, either in the first or second subdivision. (2 *R. S.*, 663, § 22.) 1. The first subdivision in words; 2. The second subdivision substantially. Could the words "forcibly ravishing" be better described than by the indictment: "with her, the said Virginia, by force and with violence, and against the will and consent of

her the said Virginia, then and there had carnal connection and sexual intercourse."

III. It informed the defendant of the charge he was to meet.

IV. The words, "and her, the said Virginia, did then and there ravish," if added, might have obviated the prisoner's objection; but would its presence have made the charge more specific? If not, there was but an imperfection of form, cured by our statute of jeofails (2 *R. S.*, *part* 4, *ch.* 2, *tit.* 4, § 51): "No indictment shall be deemed invalid, &c. (*subd.* 4), by reason of any other defect in matters of form, which shall not tend to the prejudice of the defendant." 1. He was not prejudiced, for the indictment put him on guard as to the offence for which he would be tried. 2. The word "ravish" is defined by Webster, "To have carnal knowledge of a woman by force and against her consent;" the words almost of the indictment.

*By the Court,* MITCHELL, J.—The plaintiff in error was tried at the general sessions, and found "guilty of an assault with intent to commit a rape above charged, in the form aforesaid, as by the indictment is above alleged against him." He was condemned to imprisonment in the state prison for four years and ten months. The indictment alleges that he willfully and feloniously made an assault upon one Virginia Lyons, and with her, by force and with violence, and against her will and consent, then and there had carnal connection and sexual intercourse. It does not use the word "ravish," and for this omission the writ of error is brought. The verdict is for an attempt to commit such a rape as is alleged in the indictment, and the sentence is on the supposition that the indictment contains all that is necessary on a charge of rape.

The elementary works all hold that the word "ravish" is essential in an indictment, and that no circumlocution can supply its place, and that in this it is like the word "murder."

Gouglemann *v.* The People.

Hale says (*Pleas of the Crown*, 628) the essential words in an indictment of rape are "*rapuit et carnaliter cognovit;*" but *carnaliter cognovit*, nor any other circumlocution, without the word *rapuit*, are not sufficient, in a legal sense, to express rape. He refers to the Year Books (9 *Edw. IV.*, 26, *a*); there the indictment alleged that the defendant feloniously took a woman and her then and there carnally knew, against her will, &c. The majority of the judges held this insufficient, and compared it to the case of murder, in which the indictment must contain that word.

Foster (*Crown Law*, 423, 4, *Appendix*), referring to this case, and to the diversity of opinion among the judges, says: "Broke, who abridgeth the case, concurs with the judges, who thought the indictment insufficient;" and he adds, "and this opinion is holden to be good law to this day;" and further adds: "So, if the indictment chargeth that the defendant, voluntarily and feloniously, and of malice aforethought, *killed* (*interfecit*), without saying '*murdravit*,' which is the word the statute useth, it amounts to no more than an indictment for *manslaughter*, and the offender shall have his clergy. So, in the case of buggary it was never thought sufficient to charge that the defendant *in quemdam A. B. insultum fecit, et cum eo felonice, contra naturam rem veneream habuit, ipsum que A. B. carnaliter cognovit*," which sufficiently describes the offence to a common intendment; but because the statute describes the offence by the term "buggery," the indictment goes on and charges "*peccatum illud sodomiticum, Anglice dictum* 'buggery.'"

Hawkins says (2 *Pleas of the Crown*, ch. 23, § 77): "No periphrasis or circumlocution whatever will supply a want of these *words of art* which the law hath appropriated for the description of the offence, from whence it follows that an appeal of death cannot amount to a charge of murder without the word *murdravit*, let it never be so exact and particular in setting forth the malice and all other circumstances of the killing; neither can an appeal of rape be sufficient without

the word '*rapuit*,' nor an appeal of larceny without the word '*cepit*,' nor an appeal of mayhem without the word '*mayhemavit*.'" (*Id.*, ch. 25, § 110.) To the same effect are *Barbour's Criminal Law* (*pp.* 73, 332, 3); 3 *Chitty's Criminal Law* (*p.* 812); 1 *Russell on Crimes* (*p.* 686); and in *Harmon* v. *Commonwealth* (12 *Serg. & Rawle*, 69), while the court held that the words " against the will " were unnecessary after verdict, the indictment alleging that the defendant did ravish and carnally know, they quoted as authority the expressions of opinion above stated.

The chancellor seems to refer to these cases of murder, rape, mayhem and larceny, in which Hawkins says the law has appropriated certain terms of art which no circumlocution can supply, in *The People* v. *Enoch* (13 *Wend.*, 172, 3), where, after stating that when an offence is created by statute which was not an offence at common law, as a general rule the indictment must charge the offence to have been committed under the circumstances and with the intent mentioned in the statute, he goes on to say : " But even in that case it is not necessary to pursue the exact words of the statute creating the offence, provided other words are used in the indictment which are *equivalent*, or words of more *extensive* signification, and which *necessarily* include the words used in the statute; as when *advisedly* is substituted for *knowingly*, or *maliciously* for *willfully*, and the like." Then he adds, to show the limit to this laxity in pleading : " It is otherwise in indictments for common law offences, where the law has adopted certain *technical* expressions to *define* the *offence*, or to indicate the intention with which it was committed, in which cases the crime must be described, or the intention must be expressed, by the technical *terms prescribed and no other.* Thus, in an indictment for murder, the terms "*murder of his malice aforethought* are considered *absolutely* necessary in describing the offence ; and if these words are left out of the indictment it will be considered a case of manslaughter."

Gouglemann *v.* The People.

The chancellor uses the case of murder as an illustration only, and does not confine the strict rule to that case alone, and his language is so similar to that of Hawkins, as above quoted, that it is plain he referred to the same instances to which Hawkins did, when he said that "no circumlocution whatever will supply the want of these *words of art* which the law hath appropriated for the description of the offence," and instances the word " ravish" as one, as well as the word " murder."

By all the authorities the term " murder" is essential in an indictment for that offence, and the term " ravish" in an indictment for the last offence; and the court has no more right to dispense with it in the last case than in the first. The common law made the word in the last case the word of art essential to its description, and the statute prescribing the punishment for the offence uses the same word of art, but the indictment omits it. Our statute curing certain omissions in indictments (2 *R. S.*, 728, § 52) does not make any intendment in favor of an indictment after verdict that could not be made on demurrer. The distinction noticed by the chancellor and by Hawkins reconciles these authorities above quoted with what is said in *Biggs* v. *The People* (8 *Wend.*, 547), and in *The People* v. *Phelps* (5 *Wend.*, 1): these last were not for offences to which the law had applied certain peculiar words of art.

The sentence is for a felony, the offence a misdemeanor, and the sentence should be accordingly, or the sentence should be according to the legal acceptation of the offence found.

There should be a new trial at the general sessions.

Judgment reversed.